UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRANCISCO VASQUEZ                                   CIVIL ACTION

VERSUS                                              22-00150-SDD-RLB

STARR INDEMNITY & LIABILITY COMPANY,
ET AL.

## RULING

This matter comes before the Court on the Motion for New Trial filed by Plaintiff, Francisco Vasquez ("Vasquez" or the "Plaintiff").[1] Defendant, Starr Indemnity & Liability Company ("Starr" or the "Defendant") filed an Opposition, to which Plaintiff filed a Reply.[2] For the following reasons, the motion is granted.

**I.    BACKGROUND**

This action arises from an automobile accident that occurred on October 12, 2020 in Baton Rouge, Louisiana.[3] Plaintiff was a passenger in a vehicle owned by APTIM Facilities, Inc. ("APTIM").[4] The vehicle was rear-ended by an uninsured driver, Dylan Johnson ("Johnson").[5] APTIM held a uninsured motor ("UIM" or "UM") policy with Starr.[6] The policy provided UIM/UM coverage for the vehicle up to $1,000,000.[7] Following the accident, Plaintiff brought suit in state court against Johnson and Starr.[8] He alleged Johnson's negligence solely caused the accident and as a result, he sustained significant

---

[1] Rec. Doc. 49.
[2] Rec. Doc. 57; Rec. Doc. 60.
[3] Rec. Doc. 1-1, p. 1.
[4] *Id*.
[5] *Id*.
[6] *Id.* at p. 2.
[7] Rec. Doc. 49-1, p. 2, n.1.
[8] Rec. Doc. 1-1.

injuries.[9] On March 3, 2022, Starr removed this action to this Court pursuant to 28 U.S.C §§ 1332, 1441, and 1446.[10] The parties agreed to narrow the litigation to a claim for UM/UIM coverage against Starr and stipulated that Johnson was the sole cause of the accident.[11] The Court held a jury trial on the merits on February 20 through February 21, 2024.[12] The jury had to decide whether Plaintiff proved by a preponderance of the evidence that the subject accident caused his injuries and if so assign an award that would compensate the plaintiff for those injuries.[13] On February 21st, the jury reached a verdict finding that Plaintiff met this burden.[14] The Court entered judgment in favor of Plaintiff and against Defendant in the amount of $119,892.[15] The jury's awarded general and special damages proceeded as follows:

- General Damages:
    - Past and Present Physical Pain and Suffering and loss of enjoyment of life: $5,500
    - Future Physical Pain and Suffering and loss of enjoyment of life: $0[16]
- Special Damages:
    - Past Medical Expenses: $57,196
    - Future Medical & Life Care Expenses: $57,196
    - Future Lost Wages & Loss of Earning Capacity: $0[17]

Plaintiff moves the Court for a new trial arguing the jury's damage award is contrary to the law and evidence.[18] Specifically, Plaintiff argues that the jury abused its discretion

---

[9] *Id*.
[10] Rec. Doc. 1.
[11] Rec. Doc. 49-1, p. 2.
[12] Rec. Docs. 43 and 44.
[13] Rec. Doc. 45.
[14] *Id*.
[15] Rec. Doc. 47.
[16] Rec. Doc. 45, p. 1.
[17] *Id.* at p. 2.
[18] Rec. Doc. 49.

by awarding inadequate amounts for 1) past pain and suffering, 2) future pain and suffering, 3) future medical expenses, and 4) future lost wages/loss of earning capacity.[19]

## II. LAW AND ANLYSIS

### A. Standard for a Motion for a New Trial

Generally, a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[20] "District courts 'should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.'"[21] "The district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'"[22] In reviewing the jury's verdict, the evidence and reasonable inferences derived therefrom should be viewed "in the light most favorable to the jury's determinations."[23]

### B. Analysis

#### 1. The $5,500 award for past pain and suffering

Plaintiff contends that in regards to general damages, the Court should consider past general damage awards in similar cases because they provide "a reasonable criterion by which courts can evaluate awards or general damages, whether for excessiveness or insufficiency."[24] Plaintiff relies on *Pete v. Boland Marine & Mfg., Co., LLC*, in which the Louisiana Supreme Court instructed "appellate courts [to] look at past general damage awards for similar injuries in determining whether the trier of fact 'abused

---

[19] *Id.* at p. 1.
[20] Fed. Rul. Civ. P. 59(a)(1)(a).
[21] *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F. 3d 219, 230 (5th Cir. 2020) (citing *Whitehead v. Food Max of Miss., Inc.*, 163 F. 3d 265, 269 (5th Cir. 1998)).
[22] *Cobb v. Rowan Companies, Inc.*, 919 F. 2d 1089 (5th Cir. 1991) (citing *Irvan v. Frozen Food Express, Inc.,* 809 F.2d 1165, 1166 (5th Cir. 1987)).
[23] *Matter of 3 Star Prop., L.L.C.*, 6 F. 4th 595, 613 (5th Cir. 2021) (citing *Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990)).
[24] Rec. Doc. 49-1, p. 14 (citing *Pete v. Boland Marine & Mfg. Co., LLC,* 2023-00170, p. 8 (La. 10/20/23), 379 So. 3d 636, *reh'g denied*, 2023-00170 (La. 12/7/23), 374 So. 3d 135).

its much discretion.'"[25] Defendant disagrees, arguing that the standard set forth in *Pete* differs from the standard applicable here. Defendant is correct. In *Pete*, the Louisiana Supreme Court considered a motion for judgment notwithstanding the verdict, not a motion for a new trial.[26] The Court will use the standard it sets forth above: whether there was an absolute absence of evidence to support the jury's verdict.

Plaintiff's argument ultimately turns on a credibility determination. He relies on his medical records and his own testimony; he explained that he sustained serious neck and back injuries, underwent 11 epidural steroid injection ("ESI") treatments without anesthesia, radiographic imaging, and months-long treatment by a chiropractor.[27] Further, he testified that although the accident occurred in 2020, he continues to have pain almost four years later.[28] Plaintiff argues that considering this testimony, the $5,500 award is "abusively low."[29]

But, Plaintiff also testified that even with this constant pain, he never took time off from work.[30] His employment records revealed that as an iron welder, his job involves heavy labor, and on several occasions he worked over 50 hours a week and worked

---

[25] *Pete,* 2023-00170 (La. 10/20/23), 379 So. 3d, at p. 9.
[26] *Id.* at p. 3.
[27] Rec. Doc. 49-1, pp. 4, 8. The parties did not request a transcript from Day 1 of the jury trial (February 20, 2024). However, the Court reviewed the audio recording of the testimony presented on Day 1. On February 20, 2024 at 2:19 pm through 2:21 pm, Plaintiff testified that after the accident he went back to Dr. Smith, a chiropractor he first saw in 2016 for back and neck pain. He continued that this chiropractic treatment did not work and he underwent an MRI. Dr. Smith then referred him to Dr. Johnston, an orthopedic surgeon who was accepted as an expert in the field of orthopedic surgery at trial. Pla-33. Dr. Johnston gave Plaintiff two ESI treatments and provided him with physical therapy. At 2:23 pm, Plaintiff testified that he underwent the ESI treatments without anesthesia and at 4:26 pm, Dr. Johnston testified that these treatments are given without anesthesia. At 4:25 pm, Dr. Johnston testified that in the last two and/or three years, Plaintiff received five ESI treatments in his neck and six ESI treatments in his back for a total of eleven treatments. *See also* Pla-2 (Plaintiff's chiropractic treatment records from 2016 through 2020).
[28] Rec. Doc. 49-1, pp. 8–9. At 2:29 pm, Plaintiff testified that he is still in "a lot of pain" when he goes to work. At 2:30 pm through 2:31 pm, Plaintiff testified that he wakes up every "two hours" to get relief from his pain, so he sleeps about five or six hours per night.
[29] Rec. Doc. 49-1, p. 11.
[30] On February 20, 2024, at 2:28 pm through 2:29 pm, Plaintiff testified that throughout his entire adult life he has been working.

overtime on many occasions.[31] Moreover, he has not gone to physical therapy since 2021.[32] Lastly, although he received several ESI treatments, he also testified that he manages his pain through at-home exercises and occasionally over-the-counter medication.[33] Thus, Plaintiff is essentially dissatisfied with the jury's weighing of this evidence and determination of his credibility as a witness. The Fifth Circuit instructs that these are not valid grounds upon which to grant a new trial.[34] The jury was instructed that "[t]here is no precise standard to fix [general] damages or assign some kind of value to them. Rather, [the jury's] job is to determine an amount that will be fair and just on the basis of the evidence of Plaintiff's injury and treatment that you have seen and heard, and that will fairly compensate Plaintiff for any damage he may have suffered."[35] Based on the evidence presented, the jury could have reached a number of different conclusions about compensation for Plaintiff's past pain and suffering. Accordingly, Plaintiff has failed to prove that the overwhelming weight of evidence on past pain and suffering warrants a new trial.

---

[31] Defendant argues that Plaintiff's job involves participating in "heavy labor over 80 hours per week." Rec. Doc. 57, p. 4. This representation is overstated. First, Defendant fails to cite evidence on this point, but the Court presumes that Defendant intended to reference Plaintiff's payroll records from Performance Contractors. Def-13, pp. 5–6. On February 20, 2024, on cross-examination, Defendant questioned Plaintiff about the number of hours he worked at Performance Contractors and referred the jury to Plaintiff's payroll records that were pre-admitted into evidence. These records reveal that during the week of August 2, 2021 through August 8, 2021, Plaintiff worked a total of 66.50 hours including regular time and overtime. *Id*. However, this is the highest number of hours he has worked in a singular week. There are several weeks between July 2021 and January 2023 in which Plaintiff worked over 40 hours, but the representation that he worked over 80 hours per week is incorrect. *Id*. On February 20, 2024, at 3:44 pm, on cross-examination, Plaintiff testified that he works overtime.
[32] On February 20, 2024, at 3:50 pm, on cross-examination, Defendant questioned Plaintiff about the "conservative therapy" for his injuries. Plaintiff testified that he had not been to physical therapy since 2021.
[33] On February 20, 2024, at 3:40 pm, Plaintiff testified on cross-examination that if he runs out of his prescribed painkillers from Dr. Johnston, he takes ibuprofen. At 3:50 pm, Plaintiff testified that while he had not been to physical therapy since 2021, he participates in physical therapy on his own at home.
[34] *Bovie-Clark v. Sentry Select Ins. Co.,* 568 F. App'x 312, 313 (5th Cir. 2014).
[35] The parties did not request a transcript of the Court's reading of the jury instructions on Day 2 of the jury trial (February 21, 2024). However, the Court reviewed the audio recording. On February 21, 2024, at 2:57 pm, the Court provided the jury with this instruction and read it into the record.

## 2. The $0 award for future pain and suffering

Plaintiff relies on numerous state and federal cases to argue that it was legal error for the jury to award damages for past medical expenses and future medical/life care expenses but deny an award for future pain and suffering.[36] Plaintiff cites to *Wiltz v. Welch*, in which the Fifth Circuit discussed this issue in depth.[37] The Fifth Circuit explained that a number of Louisiana court decisions have held that a jury's award of medical expenses without general damages for pain and suffering is inconsistent in light of the record.[38] However, this does not render a verdict awarding medical expenses but denying general damages as *per se* invalid.[39] Citing the Louisiana Supreme Court, the Fifth Circuit concluded that:

> [T]he demarcation line for these cases is whether the plaintiff has proven objective injuries that require medical care. If a plaintiff establishes objective injuries, then a jury's failure to award damages for pain and suffering is an abuse of discretion. But if a plaintiff fails to prove objective injuries and instead incurs medical expenses for evaluative or precautionary purposes, then a jury's award of special damages but no general damages is not an abuse of discretion.[40]

Defendant points the Court to *Roark v. Wal-Mart, La., LLC*.[41] In that case, a plaintiff suffered from a hand injury after falling in a Wal-Mart store parking lot and the case went to trial.[42] The plaintiff moved for a new trial in part because the jury awarded her future medical expenses but failed to award her damages for future pain and suffering.[43] The Eastern District of Louisiana found this did not warrant a new trial.[44] The court

---

[36] Rec. Doc. 49-1, pp. 11–12.
[37] 651 F. App'x 270 (5th Cir. 2016).
[38] *Id.* at 272 (citing several state cases).
[39] *Id.* (citing *Wainwright v. Fontenot*, 2000–0492 (La .10/17/00); 774 So.2d 70, 76).
[40] *Id.* at 273.
[41] 2012 WL 1825395 (E.D. La. May 18, 2012).
[42] *Id.* at *1.
[43] *Id.* at *5.
[44] *Id.* at *6.

acknowledged the Louisiana Supreme Court's rejection of a *per se* rule that would invalidate awards for medical expenses without an accompanying award for pain and suffering.[45] The Louisiana Supreme Court concluded that "there is no bright line rule," instead the outcome is fact-dependent.[46] Turning to its analysis, the Eastern District considered the fact that the jury heard medical testimony, and determined that the only future medical expenses the plaintiff was expected to incur were those related to improve her hand strength and to complete physical therapy.[47] The court concluded that the jury did not hear evidence indicating that either forms of treatment would cause pain or suffering.[48] Accordingly, denying an award for future pain and suffering was reconcilable.

Defendant also cites *Vargas v. Manson Gulf, LLC*, in which the Eastern District again considered a jury's award of future medical expenses without an award for future pain and suffering.[49] The court found that the jury's award of future medical expenses without an award of future general damages was reconcilable.[50] In that case, the plaintiff's expert life care planner testified that the plaintiff was required to receive "extensive future medical treatment, including steroid injections, MRI scans, and possibly a knee replacement."[51] But, the court found that the jury discounted this testimony in favor of the plaintiff's physician who testified that it was unlikely that the plaintiff would need this "extensive future medical treatment."[52] There was also uncontroverted evidence that the plaintiff completed his physical therapy, returned to "full-duty manual labor," and did not

---

[45] *Id.* at *5 (citing *Wainwright*, 2000–0492 (La .10/17/00); 774 So.2d 70).
[46] *Id.*
[47] *Id.* at *6.
[48] *Id.*
[49] 439 F. Supp. 3d 809 (E.D. La. 2020). Defendant refers the Court to *Roark* but then provides the citation to *Vargas* in its briefing. Accordingly, the Court addresses both cases. Rec. Doc. 57, p. 7, n.21.
[50] *Id.* at 814.
[51] *Id.*
[52] *Id.*

Case 3:22-cv-00150-SDD-RLB   Document 61   09/18/24   Page 8 of 10

experience daily pain, aside from "occasional discomfort" that was alleviated with ibuprofen.[53] Accordingly, the Eastern District found that the "jury was entitled to view this testimony as suggesting that any future pain would be addressed and controlled by [] minimal measures."[54] The evidence "support[ed] the jury's finding that any future pain would be too minor or brief to be compensable."[55]

In both cases, the Eastern District reached its conclusion by looking to the specific facts of the case and declined to rely on the proposition that a jury's award of future medical expenses without an award for future pain and suffering is always inconsistent with the law.

Defendant argues that *Roark* is analogous to the instant case.[56] Defendant contends that the only testimony related to future pain and suffering concerned the quality of Plaintiff's life if he were to undergo the recommended surgeries.[57] Plaintiff testified that his expert witness, neurosurgeon, Dr. Oberlander,[58] recommended he undergo surgery on his neck and lower back, but there was conflicting testimony concerning whether Plaintiff would actually follow this recommendation.[59] Thus, Defendant argues that

---

[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] Rec. Doc. 57, p. 7.
[57] *Id.*
[58] Pla-32.
[59] On February 20, 2024, at 2:28 pm, Plaintiff testified that he intends to have the surgeries, but on cross-examination at 3:52 pm, Plaintiff testified that he has not scheduled any surgery with Dr. Oberlander. Dr. Oberlander testified that he has not seen Plaintiff since May 2023, he has not scheduled the lower back surgery for Plaintiff, and he did not know if Plaintiff would have surgery. Rec. Doc. 54, p. 26:7–15. Additionally, the records from Plaintiff's last appointment with Dr. Oberlander on May 5, 2023, state that he may need one of the surgeries "someday but it should be a last resort." Def-11(d), p. 9. Dr. Oberlander recommends that Plaintiff "maximize conservative treatment" and sent Plaintiff to Dr. Johnston for another ESI treatment. *Id.*

Page 8 of 10

because Plaintiff did not meet his burden of proof with respect to these surgeries, the jury found his medical treatment would not cause future pain and suffering.[60]

Plaintiff counters that *Roark* is distinguishable because in *Roark*, the jury awarded only $5,500 for future medical expenses, whereas here, the jury awarded $57,196, "suggesting that the jury believed Vasquez's future medical treatment would consist of more than just follow-up visits and/or physical therapy."[61] Plaintiff continues that "[a]t the very least" the jury believed Plaintiff would undergo additional ESI treatments.[62] The Court is persuaded by Plaintiff's argument. The jury awarded the exact same amount for past medical expenses and future medical/life care expenses.[63] Plaintiff's past medical treatment consisted of 11 ESI treatments over the course of two or three years without anesthesia, prescribed pain medication, and brief chiropractic treatment.[64] With respect to the ESI treatments, Plaintiff testified that the injections "really hurt."[65] He also testified that when receiving an injection he experiences a "sharp" pain and "burning sensation[s]" in his neck and back.[66] The jury determined that Plaintiff sustained objective injuries requiring medical care because they awarded him special damages for past medical expenses in the amount of $57,196 and an accompanying, albeit modest, award for past pain and suffering.[67] The jury's verdict on future pain and suffering is patently inconsistent with its sizable award for future medical costs. The facts herein are distinguishable from *Roark* and *Vargas*. The Court finds that no reasonable trier of fact could award $57,196

---

[60] Rec. Doc. 57, p. 7.
[61] Rec. Doc. 60, p. 4.
[62] *Id.* at pp. 4–5.
[63] Rec. Doc. 45, p. 2.
[64] Rec. Doc. 49-1, p. 4; *see supra* nn. 27 and 33.
[65] On February 20, 2024, at 2:22 pm through 2:23 pm Plaintiff provided this testimony on direct examination.
[66] *Id*.
[67] Rec. Doc. 45.

for future medical costs and no compensation for future pain and suffering. Accordingly, the jury abused its discretion by failing to award damages for future pain and suffering.

With this finding there is no need for the Court to address Plaintiff's remaining arguments. The motion for a new trial is granted.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for New Trial[68] is hereby **GRANTED**. The parties are referred to the Magistrate Judge for a scheduling order.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, on this 18th day of September, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[68] Rec. Doc. 49.